Jack C. SCHOENHOLTZ, as Administrator of the Rye Psychiatric Hospital Center, Inc., Supplemental Retirement Income Fund-Fixed and Rye Psychiatric Hospital Center, Inc., Supplemental Retirement Income Fund-Variable, Plaintiffs,

v.

David E. DONIGER, I. Jay Lauer and Alexander Carlen, Defendants.

No. 83 Civ. 2740 (IBC).

United States District Court, S.D. New York.

Feb. 14, 1986.

Rogers, Hoge & Hills, New York City, for plaintiffs; Frederick A. Nicoll, of counsel.

Cerrato, Sweeney, Cohn, Stahl & Vaccaro, White Plains, N.Y., for defendants; Julius W. Cohn, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff brings this action alleging that defendants have breached and continue to breach fiduciary duties owed to two employee retirement plans at the Rye Psychiatric Hospital Center in Rye, New York in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff seeks recovery for damages to the plans, attorneys' fees and punitive damages.

Defendants assert twelve affirmative defenses and five counterclaims generally alleging they owed no fiduciary duties with respect to the plans; that if any such duties were in fact to be undertaken by them, they did not breach any; and the impropriety on plaintiff's part in maintaining this law suit.

Our findings of fact and conclusions of law, which are set forth below, follow a fourteen day trial to the Court at which thirteen witnesses gave sworn testimony and over one hundred trial exhibits were received into evidence.

Before setting forth our findings, we are compelled to note our unalterable impression that, for the most part, the testimony of each defendant was evasive, grossly exaggerated—totally unconvincing; we have no alternative to rejecting it in the main.

Further, we cannot refrain from revealing our astonishment upon learning, from their testimony adduced at trial, their ignorance as to the structure and operation of the retirement plans and their fiduciary obligations with respect to them—the very subject matter of this litigation.

In contrast we remain favorably impressed by the testimony of plaintiff's witnesses; we find it persuasive.

## FINDINGS OF FACT

1. The Rye Psychiatric Hospital Center, Inc. (the "Hospital") incorporated under the laws of this State on October 18, 1973 is a private psychiatric hospital located in Rye, New York and licensed by the New York Office of Mental Health. (Tr. 713–15, 722–23) [1] The Hospital cares for approximately 300 mentally ill persons each year. (Tr. 617, 944)

2. The voting shares of the Hospital are equally divided among Leonard J. Essman, M.D., Salvatore J. Pagliaro, M.D., Jack C. Schoenholtz, M.D., and the defendants herein: David E. Doniger, M.D., I. Jay Lauer, D.D.S., and Alexander Carlen, M.D. (F. 2) These six persons comprised the board of directors (or board of governors) of the Hospital from its inception until November 12, 1982, when Drs. Schoenholtz, Essman and Pagliaro were elected the sole directors at a special meeting of shareholders unattended by the defendants. (F. 3; *In the Matter of Rye Psychiatric Hospital Center, Inc.,* 66 N.Y.2d 333, 497 N.Y.S.2d 317, 488 N.E.2d 63 (1985)) Presently Dr. Schoenholtz is the Hospital administrator and medical director pursuant to a management contract between the Hospital and his wholly owned professional corporation. (Tr. 710)

3. On December 27, 1979, the Hospital created two pension plans for the benefit of Hospital employees pursuant to § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a), and §§ 3(2), (34) and 402 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(2), (34) and 1102. These pension plans are known as the Rye Psychiatric Hospital Center, Inc., Supplemental Retirement Income Fund-Fixed (the "Fixed Plan") and the Rye Psychiatric Hospital Center, Inc., Supplemental

---

1. Throughout this opinion, the letters "Tr." followed by a number in parentheses indicates a particular page number in the trial transcript. The letter "F" followed by a number in parentheses indicates a particular paragraph number in Plaintiff's and Defendants' Statement of Undisputed Facts in the Joint Pre-Trial Order. The same applies to an "Ex." which refers to a specific trial exhibit.

Retirement Income Fund-Variable (the "Variable Plan") (collectively called the "Plans") (F. 5; Ex. 1, 2) The Variable Plan was implemented on December 27, 1979; the Fixed Plan was implemented in 1980 (exact date unspecified). (Ex. 6, 2, 12; Tr. 742–43, 751–53) The Fixed Plan provides for an annual mandatory contribution by the Hospital of ten percent of the total compensation of the participants; the Variable Plan provides for an annual voluntary contribution of up to 15 percent of the total participant compensation. Each year since the establishment of the Plans, beginning with 1979, the Hospital has made the maximum allowable contributions to the Plans. (Ex. 1, 2; Tr. 904–06)

4. At the inception of the Fixed Plan and the Variable Plan, the six shareholders and directors served as trustees of the Plans. (Ex. 1, 2; Tr. 34, 37–38, 40–41, 208, 751–52, 756–58, 1448–49, 1855, 1975, 2065, 2070) In addition, defendants Doniger and Lauer assumed the responsibility of investment manager of the Fixed Plan and the Variable Plan, respectively. Defendants Carlen and Lauer accepted the duties of custodians of the Fixed Plan and the Variable Plan, respectively. Plaintiff is the administrator of both Plans. The duties of investment manager are set forth in § 8.08 of each Plan and the duties of custodian are set forth in § 8.09. The duties and responsibilities of administrator are set forth in § 8.10 of the Plans. (Ex. 1, 2)

5. It was the expressed intent when the Plans were adopted that up to 100 percent of the assets of the Plans were to be invested in Hospital securities (so stated in § 8.09 of each Plan). (Ex. 1, 2; Tr. 738–39, 787) At a meeting on August 3, 1981, the shareholders unanimously approved amendment of the Hospital Certificate of Incorporation to authorize 1,000,000 shares of non-voting Class B Common stock and 240,000 shares of Preferred Stock-Series 1981, convertible into Class B Common. (Tr. 56–57, 808–18, 1641) The sole purpose for the creation of Preferred Series 1981 and Class B Common was to sell the Preferred stock to the Plans. It was intended that each year a new Preferred series would be authorized and sold to the Plans. (Ex. 1, 2, 118; Tr. 807, 1266–72)

6. At their August 3, 1981 meeting, the Hospital directors unanimously authorized the sale by the Hospital to the Plans of 119,593 shares of Preferred-Series 1981 for $1.00 per share. The same day, the trustees of the Plans unanimously authorized the purchase of these shares. (Tr. 56–57, 808–18, 1641)

7. At a special meeting of the board of directors on November 9, 1981, Dr. Lauer proposed that a dividend of $30,000 be issued to each of the six shareholders. The proposal did not meet with approval. Dr. Doniger then moved for a $25,000 dividend payment, which also did not meet with approval. Plaintiff and Drs. Essman and Pagliaro expressed their belief that such a substantial dividend would be detrimental to the Plans. (Ex. 37; F. 11; Tr. 72–74, 564, 820–27, 1118–19, 1128–30, 1186–87, 1200–02)

8. Following failure to obtain board approval for their proposed dividends, they jointly planned and embarked upon a scheme to gain control of the Hospital by boycotting or disrupting all subsequent meetings in an effort to paralyze the Hospital operations. The scheme had two complementary objectives. One was the ouster of Dr. Schoenholtz who defendants particularly perceived as blocking the financial expectations of their investment. With control of the board, defendants believed they could obtain the level of financial reward they thought appropriate. (Tr. 93–95, 294–95, 2017–18)

9. On various occasions beginning on November 9, 1981 defendants made positive assertions to the other directors to the effect that they would deadlock all decisionmaking affecting the Hospital and prevent it from functioning unless Dr. Schoenholtz was removed and defendants were able to sell their stock to an outside purchaser. An existing shareholders' agreement gave non-selling shareholders a right of first refusal at a stipulated price before

any shareholder could dispose of his stock. (Tr. 822–28, 836, 1466–67, 1564–65)

10. In execution of their scheme, defendants intentionally disrupted the January 19, 1982 board of directors meeting by refusing to allow any business to be conducted unless they were permitted to tape record the proceedings. (Ex. 40; Tr. 79–83, 698, 832–35, 1463–64) On that occasion defendants knew full well that tape recording of meetings had previously been prohibited by vote of the board at the meeting on February 6, 1981. (Tr. 2027) By disrupting the January 19, 1982 meeting and refusing to participate therein, defendants foreclosed the possible consideration of matters concerning or of importance to the Plans, particularly the potential sale and purchase of the remaining 120,408 shares of Preferred Series 1981. Their conduct also precluded a meeting of the trustees.

11. At all relevant times, defendants knew that matters relating to the Plans frequently arose during regular board meetings and that meetings of the Plans' trustees routinely followed meetings of the board of directors, even in the absence of specific notice of a meeting of trustees. (Tr. 48, 88–89, 470, 1252–54, 1453, 2139–40)

12. At an executive committee meeting on February 22, 1982 attended by Drs. Schoenholtz, Essman and Doniger, Dr. Doniger demanded that a stenographer record the meeting. A vote was taken which resulted in a two to one decision to prohibit the stenographer's presence at the meeting. (Tr. 841–44, 1900–02)

13. At the February 22, 1982 executive committee meeting, Dr. Doniger raised the question of whether Dr. Essman had been elected Vice President and was properly a member of the executive committee. (Tr. 1290–91, 1578)

14. All the directors received due notice of a meeting of the Hospital board of directors scheduled to be held on April 26, 1982. (Ex. 44, 45; Tr. 85) Defendants agreed among themselves that they would boycott that particular meeting, thereby insuring that a quorum could not be obtained for the conduct of Hospital business, and so informed Dr. Schoenholtz. (Ex. 47; Tr. 85–87) Because of defendants' failure to attend, no business relating to the Plans could be conducted and no meeting of the trustees could be held.

15. Dr. Doniger sent a letter dated April 27, 1982, with a cover letter dated May 25, 1982, to Kenneth Simon, Esq., the Hospital's counsel. (Ex. DM) In that letter, Dr. Doniger asserted that Dr. Essman was not a member of the board of directors and raised questions concerning Dr. Essman's true status. The letter further stated, "... you may feel free to let Dr. Schoenholtz know that it will not be possible to obtain a quorum or transact Governing Board business until this information has been supplied." (Id.)

16. Dr. Carlen testified that if it were proven that Dr. Essman was not a director, defendants would have had a majority of votes. (Tr. 91) He also admitted that defendants discussed Dr. Essman's removal as a means of obtaining the dividends they desired, and, equally important, to get rid of Dr. Schoenholtz. (Tr. 159, 93)

17. On July 2, 1982, defendants demanded a special meeting of the board of directors to consider Dr. Essman's status as a board member and a demand for Dr. Schoenholtz's immediate resignation. (Ex. 54) Shortly thereafter, defendants received due notice of a regular meeting of the board of directors to be held on July 12, 1982, when defendants' items of business were to be considered together with regular Hospital affairs. (Ex. 56; Tr. 856–57) Pursuant to their scheme, defendants agreed that they would not attend the July 12, 1982 meeting; they absented themselves. It was defendants' position that Dr. Schoenholtz had not appropriately responded to their demand for a special meeting. (Ex. 58) By reason of defendants' failure to attend, no action could be taken at the regular meeting of the board of directors held on July 12, 1982. Plaintiff had intended that Plan business be considered at that meeting. (Tr. 857)

18. Dr. Lauer testified that since defendants requested the special meeting before the board meeting was scheduled, the former, with its specific agenda, should have taken precedence to the exclusion of any other Hospital or Plan business. (Tr. 2146)

19. In accordance with defendants' demand, they received due notice of a special meeting of the board of directors to be held on July 26, 1982. (Ex. 60) At the July 26, 1982 meeting, defendants made a motion to tape record the proceedings. The motion failed to carry and, pursuant to the agreement among themselves, defendants intentionally disrupted the meeting and refused to participate further. (Ex. 113; Tr. 101–07, 860–65, 1917–19)

20. In August, 1982, as part of their plan to gain control of the board, defendants commenced a proceeding in the Supreme Court of the State of New York, County of Westchester, pursuant to Article 78 of the New York Civil Practice Law and Rules seeking a declaration that Dr. Essman was not a director of the Hospital corporation and that it had been improper to refuse to permit tape recording of the July 26, 1982 meeting. (Ex. 113) On March 26, 1983, defendants withdrew their claim as to Dr. Essman's status and acknowledged that he was a director. By decision dated May 12, 1983, the Honorable Abraham Isseks held that defendants had disrupted the July 26, 1982 meeting, that a tape recording was correctly not permitted and that Dr. Schoenholtz had properly conducted the meeting. (Ex. 77)

21. Defendants also commenced a shareholders' derivative action in New York State Supreme Court, County of Westchester, against plaintiff in August, 1982. That action is still pending. (Tr. 114, 866)

22. Defendants received notice dated September 14, 1982 of a regular meeting of the board of directors to be held on October 25, 1982 and to be followed by a meeting of trustees of the Plans. (Ex. 64, BD; Tr. 866–69) The directors were specifically informed that, among other items of business, the 1982 Hospital evaluation would be presented and that they would consider the proposed new issue of Preferred Stock-Series 1982. (F. 12) On October 22, 1982, defendants moved for an order enjoining the meeting until determination of their Article 78 proceeding; they obtained an order temporarily enjoining the directors' meeting and a special shareholders' meeting scheduled for November 12, 1982, which had been called for the election of directors. No injunction of the meeting of trustees was requested or issued. (F. 15; Tr. 117)

23. On or about October 22, 1982, defendants received notice that, pending a decision on their motion for an injunction, the board of directors meeting originally scheduled for October 25, 1982 was rescheduled for November 1, 1982, to be followed by a meeting of the trustees. (Ex. 65; Tr. 117–18) However, the administrative assistant to Dr. Schoenholtz, Amy Schoen, telephoned each director on October 25th to remind him that the trustees would meet as scheduled that evening. (Tr. 311–13, 869, 1330) Defendants failed to attend the meeting of the Plans' trustees on October 25, 1982 and, as a result of the absence of a quorum, the trustees were unable to conduct any Plan business. Dr. Doniger testified that he did not intend that the trustees' meeting be enjoined. (Tr. 2015) Dr. Lauer, on the other hand, testified that the defendants agreed not to attend. (Tr. 2135–36)

24. On October 25, 1982, Dr. Schoenholtz wrote to defendants expressing his concern over their failure to attend the board of trustees' meeting that evening and noted that they would be violating their fiduciary responsibilities as trustees, custodians and investment managers of the Plans if they continued to treat the Plans as a mere appendage of the board of directors of the Hospital corporation. (Ex. 66)

25. Defendants received notice that the meeting of the Hospital board of directors to be held on November 1, 1982 was re-

scheduled for November 22, 1982. (Ex. 68; Tr. 1595–98, 1615)

26. On or about September 11, 1982, defendants received notice of the special meeting of shareholders to be held on November 12, 1982 for the purpose of electing directors. On October 27, 1982, defendants withdrew the temporary restraining order against the November 12, 1982 special meeting of shareholders, which had been in effect since October 22, 1982. Nonetheless, defendants failed to attend the special meeting (held November 12, 1982). At that special meeting, Drs. Schoenholtz, Essman and Pagliaro were elected as the sole directors. The meetings of directors and trustees previously scheduled for November 22, 1982 were cancelled. (F. 19; Ex. 69, 70; Tr. 124)

27. On November 19, 1982, defendants commenced a special proceeding in the Supreme Court of the State of New York, County of Westchester, seeking to set aside the election of directors and officers held November 12, 1982. (F. 20; Tr. 124) The Supreme Court, Special Term, granted defendants' petition and held that the three shareholders present at the meeting—Drs. Essman, Pagliaro and plaintiff—failed to elect a full complement of six directors, that they had no authority to reduce that number and, therefore, that they failed to fulfill the sole purpose for which the special meeting had been called. The court adhered to its original decision on reargument.

On appeal, the Appellate Division modified the order of Special Term and held that proper notice of the special meeting had been given to all parties and that the three shareholders present at the meeting had the necessary quorum to elect themselves directors. However, the Appellate Division also ruled that the size of the board of directors had been established as six by the parties' prior course of dealings and that the three defendants herein—Drs. Doniger, Carlen and Lauer—remained as holdover directors.

By a decision dated November 19, 1985, the New York State Court of Appeals re-versed the Order of the Appellate Division and determined that the special meeting of shareholders and the election of Drs. Schoenholtz, Essman and Pagliaro as directors and officers of the Hospital were properly held. The Court of Appeals held that "[p]ursuant to the unambiguous and unequivocal language of [the Business Corporation Law § 702(a)], where, as here, the corporate by-laws make no provision whatsoever for the size of the board of directors, 'the number shall be three.'" *In the Matter of Rye Psychiatric Hospital Center, Inc.*, 66 N.Y.2d 333, 337, 497 N.Y. S.2d 317, 318, 488 N.E.2d 63, 65 (1985) (quoting New York Business Corporation Law § 702(a))

28. As part of the special proceeding to set aside the election of Drs. Schoenholtz, Essman and Pagliaro as directors, at the special meeting of shareholders held November 12, 1982, defendants obtained an injunction against any further meetings of the board of directors; the injunction was in effect between November 22, 1982 and May 1, 1983. However, Dr. Schoenholtz was authorized by Court order to continue to manage the Hospital. (Tr. 1401)

29. On March 25, 1983 an action based upon 29 U.S.C. § 1132(d)(1) was commenced against these defendants in the name of the Plans—so much thereof which provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." When plaintiff learned that five weeks earlier our Circuit had held that section did not provide standing to the Plans to bring an action for civil enforcement of ERISA's fiduciary provisions, *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983), the action was voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a)(1)(i). The action now before us was then brought on April 8, 1983 by Dr. Schoenholtz in his fiduciary, representative capacity as Administrator of the Plans. (Ex. DT)

30. In response to defendants' efforts to find a purchaser for the Hospital, Robert Bardey, Esq., conveyed an offer to pur-

chase the stock of the Hospital for a total value of about $4.3 million. (Ex. 80; Tr. 889) ("the Bardey offer") The offer was made in a letter addressed to Dr. Lauer, dated May 25, 1983, but sent to counsel for defendants with a cover letter from Mr. Bardey. (Ex. 79)

31. On May 27, 1983, defendants requested a special meeting of the board of directors to consider the Bardey offer. (Ex. 81) However, since defendants on May 26, 1983 had made application to the Supreme Court of New York, Westchester County, for an injunction against any further meetings of the Hospital boards, Dr. Schoenholtz declined to schedule the special meeting. He also pointed out to defendants that consideration of the Bardey offer was properly a matter for the shareholders. (Ex. 82)

32. Dr. Schoenholtz scheduled a meeting of Plan trustees for June 13, 1983 to once again consider the Plans' purchase of the remaining 120,408 shares of Preferred Series 1981 in light of the Bardey offer, which amounted to approximately $1.1 million more than the most recent Hospital evaluation at that time. (Ex. 84; Tr. 890–93, 896–98)

33. Defendants attended the June 13, 1983 meeting accompanied by personal counsel who refused to leave, despite the fact that the majority of members did not favor his attendance. Once again, no action was taken and nothing accomplished at that meeting. (Tr. 898–902, 1810–16)

34. On July 26, 1983, defendants resigned as trustees, custodians and investment managers of the Plans. The resignations were effective on August 26, 1983. (Ex. 86; Tr. 145) Between November 9, 1981 and the date of their resignations, defendants did not attend and participate in any meetings of the trustees of the Plans.

35. Between November 9, 1981 and August 29, 1983, defendants did not attend and participate in any meetings of the Hospital board of directors.

36. After either refusing to attend or disrupting every meeting of the Hospital board of directors and trustees since November 9, 1981, defendants on August 12, 1983 demanded another special meeting of the board of directors to consider, *inter alia,* the non-renewal of Dr. Schoenholtz's management contract; the resignations of Drs. Schoenholtz, Essman and Pagliaro as trustees of the Plans; and holding Dr. Schoenholtz liable for the 1982 contribution to the Variable Plan which they claimed he had caused to be made without a majority vote of the directors. (Ex. 78) We note that Dr. Schoenholtz also caused the contribution to the Variable Plan to be made for 1983. (Tr. 574–76, 695, 904–06)

37. On August 29, 1983, three days after the resignations by defendants as trustees, investment managers and custodians became effective, the special meeting demanded by defendants was held. (Ex. 88) Although defendants were again accompanied by personal counsel, he withdrew when his presence was objected to. All of the matters raised by defendants failed to command a majority except one—to consider a different accounting firm for the Hospital. (Ex. 115; Tr. 906–09)

38. On August 26, 1983, the effective date of the resignations of defendants as trustees, the remaining trustees, Drs. Schoenholtz, Essman and Pagliaro, met and resolved to request the directors to sell the remaining 120,408 shares of Preferred Series 1981 to the Plans. (Tr. 99, 914)

39. Dr. Schoenholtz duly scheduled a directors' meeting to consider this request; it was held on September 26, 1983. (Ex. 94; Tr. 914) Defendants attended this meeting and voted against the sale; Drs. Schoenholtz, Essman and Pagliaro voted in favor. (Ex. 91; Tr. 915–25) Assigning as a reason for their vote, defendants took the position that it was imprudent for the Plans to purchase Hospital stock because the value of that stock was impaired by the existing shareholders' agreement granting a right of first refusal in the event of a sale of stock, which agreement was executed by the shareholders a year and a half before the Plans were adopted and three years before the design for the securities to be

sold to the Plans was accepted by the directors. (Ex. 91; Tr. 1525, 2036–37)

40. In view of the conduct of defendants, including their refusal to attend the special meeting of shareholders in November, 1982, their boycott of all other Hospital and Plan meetings, their repeated refusal to permit the sale of the remaining shares of Preferred Series 1981 to the Plans and their announced opposition to the sale of Hospital stock to the Plans, it would have been futile for plaintiff to attempt to obtain authorization of the shareholders to create and issue Preferred stock in 1982 and 1983.

41. The willful acts by defendants and their omissions prevented the Plans' investment of contributions in Hospital securities for the years 1980, 1981, 1982 and 1983.

42. Defendants acted with wanton indifference to the rights of the participants and beneficiaries. They knew or should have known that their conduct was injurious to the laudable objectives of the Plans and the beneficiaries to whom they owed the plain and obvious duty to protect.

CONCLUSIONS OF LAW

A. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1).

B. Section 404 of ERISA, 29 U.S.C. § 1104, codifies fiduciary duties as follows:

(a)(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the Plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.

■ C. With respect to § 1104(a)(1)(A)(i), we find that defendants failed to act exclusively for the benefit of the participants and beneficiaries of the Plans. Indeed, the evidence clearly demonstrates that defendants acted solely to further their personal interests by allowing their disagreements with Dr. Schoenholtz on corporate matters and hospital business to prevent any action in favor of the Plans for a period of almost two years.

■ D. Focusing on § 1104(a)(1)(B), we emphasize that ERISA imposes an affirmative duty to act with prudence and diligence. *Donovan v. Bierwirth*, 538 F.Supp. 463, 470 (E.D.N.Y.1981), *mod. on other grounds*, 680 F.2d 263 (2d Cir.1982), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1983). The duty of fiduciaries of a plan under ERISA is the same as that historically imposed on trustees under the common law. *Marshall v. Teamsters Local 282 Pension Fund*, 458 F.Supp. 986 (E.D.N.Y.1978). The test of prudence

is one of conduct, and not a test of the result of performance of the investment. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not in whether his investments succeeded or failed. 19B *Business Organizations*, S. Young, Pension and Profit-Sharing Plans § 17.02[3] at 17–29.

*Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir.1983). On all the proceedings heretofore had, we are compelled to conclude that defendants failed to act with the appropriate care, skill, prudence and diligence required under this section of ERISA.

■ E. Section 1104(a)(1)(D) requires fiduciaries to act in accordance with the instructions governing a plan. The trustees have a "statutory fiduciary duty to uphold the purpose of the plan." *Fine v. Semet*, 514 F.Supp. 34 (S.D.Fla.1981), *aff'd*, 699 F.2d 1091 (1983).

The purpose of both of the instant Plans, as described in § 1.03 of each of them, is to

provide retirement benefits to eligible employees. In addition, the Plans provide in § 8.09 of each that it is "expressly intended that up to one hundred percent (100%) of the funds of the Trust may be invested in Qualifying Employer Securities and/or qualifying Employer Real Property."

Further, § 2.04 of each Plan enumerates the duties of a fiduciary which are *identical with those under ERISA*, 29 U.S.C. § 1104 (set forth hereinabove).

Based on the facts heretofore enumerated, we find that defendants failed to fulfill their obligations as trustees in accordance with the general goal, intent and specific instructions of the Plans.

F. Section 8.08 of each Plan defines the duties of a custodian as follows:

The Custodian shall have the responsibility and authority, subject to appropriate written instructions, to

(a) Establish a separate and distinct account in the name of the Plan ... for the purpose of retention of Plan assets.

(b) Receive and hold cash, or other property approved for acceptance in the Trust.

(c) Make payments from the account for periodic investments into insurance or annuity contracts, securities, funds and other authorized investments....

(d) Make payments from the account to terminated, deceased, disabled or retired Participants in amounts as specified....

(e) Make purchases or sales of assets from the account.

(f) Receive and distribute to the appropriate party, on a timely basis, all notices, confirmations of purchases, options and warrants, including notification of maturity dates of bonds and certificates.

(g) Prepare annually or upon request, a valuation, at current market value, of the Plan assets held in the account, including a balance sheet and detailed statement of cash receipts and disbursements.

Any of the foregoing actions taken pursuant to subsections (a) to (g), both inclusive, must be undertaken in a prudent manner and be consistent with the objectives of the Plan and made within the intent of Section 2.04.

G. Section 8.09 of each Plan defines the duties of the investment manager as follows:

The Investment Manager shall have the responsibility and authority to purchase, sell, invest and reinvest all or part of the Trust Fund in such property, ... or other investments of any and every nature permissible under applicable laws and regulations....

It is expressly intended that up to one hundred percent (100%) of the funds of the Trust may be invested in Qualifying Employer Securities and/or qualifying Employer Real Property. Employer contributions in cash and other cash received by the Trust may be applied to purchase additional shares of Employer Securities from current shareholders or shares from the Employer. All purchases of Employer Securities shall be made at prices which, in the judgment of the Trustees, do not exceed the fair market of such shares.

In addition the Investment Manager may:

(a) Borrow, lend, or raise money for the purpose of the Trust....

(b) Retain such portion of the Trust Fund in cash balances as may, ... be deemed to be in the best interests of the Trust....

(c) Acquire real estate....

(d) Invest Trust Funds in an Insurance or Annuity Contract....

(e) Make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

(f) Employ one or more persons....

(g) Not cause the Plan to engage in a transaction which is knowingly prohibited under ... the Internal Revenue Code or adverse to the interest of Participants or their Beneficiaries.

Any of the foregoing actions taken, pursuant to subsections (a) to (g), both inclusive, must be undertaken in a prudent manner and be consistent with the objectives of the Plan and made within the intent of Section 2.04.

■ H. We find that Dr. Doniger willfully and intentionally failed to carry out his fiduciary duty under § 404(a) of ERISA, 29 U.S.C. § 1104(a), and under § 2.04 of each Plan (set forth hereinabove); he also willfully and intentionally failed to carry out his fiduciary duty as investment manager of the Fixed Plan, pursuant to § 8.09 of the Fixed Plan, from January, 1982 until August 26, 1983. (Ex. 1)

I. We further find that Dr. Carlen willfully and intentionally failed to carry out his fiduciary duty under § 404(a) of ERISA, 29 U.S.C. § 1104(a), and under § 2.04 of each Plan; he also willfully and intentionally failed to carry out his fiduciary duty as custodian of the Fixed Plan, pursuant to § 8.08 of the Fixed Plan, from January, 1982 until August 26, 1983. (Ex. 2)

J. We also find that Dr. Lauer willfully and intentionally failed to carry out his fiduciary duty under § 404(a) of ERISA, 29 U.S.C. § 1104(a), and under § 2.04 of each Plan; he also willfully and intentionally failed to carry out his fiduciary duty as custodian of the Variable Plan and as investment manager of the Fixed Plan, pursuant to § 8.08 of the Variable Plan and § 8.09 of the Fixed Plan, from January, 1982 until August 26, 1983. (Ex. 1, 2)

■ K. A shareholder or director of a corporation may be considered a fiduciary with respect to a plan. ERISA, 29 U.S.C. § 1002(21)(A), provides, in pertinent part: a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

■ Each of the six directors discussed herein also acted as trustees of the Plans as well as shareholders and directors of the Hospital. The objective of the Plans to invest the assets in Hospital securities could not be met unless the shareholders issued the necessary Hospital stock and the board of directors authorized its sale to the Plans. As shareholders and directors of the Hospital, defendants exercised direct control over the disposition of Plan assets. Consequently, we find that from January, 1982 until the present defendants willfully and intentionally failed to carry out their fiduciary responsibilities to the Plans as shareholders and directors of the Hospital in distinct violation of the imperatives set forth in § 404(a) of ERISA, 29 U.S.C. § 1104(a).

■ L. Defendants' first counterclaim is that plaintiff has acted outside the scope of his authority in maintaining the present action, that the action was not brought solely in the interest of the participants and beneficiaries of the Plans, and that plaintiff has not acted with the required degree of care, skill, prudence and diligence in bringing the action. We find that Dr. Schoenholtz acted prudently, properly and in accordance with the requirements of law in every respect by commencing this action for the benefit of the Plan participants and beneficiaries. Accordingly, the first counterclaim is dismissed.

■ M. The second counterclaim alleges that plaintiff breached his fiduciary duties by failing to deliver copies of the 1982 Neuberger and Berman financial evaluation of the Hospital to defendants. The failure of defendants to receive a copy of this document was the result of their own refusal to attend the specific meeting called to deal with that problem among others, of which meeting they had been duly notified. (Ex. BD, 64; Tr. 118–20, 869–72, 1335–37) There has been no evidence indicating that defendants requested copies of the evaluation at any time prior to the commencement of this action. By reason of the persistent course of conduct resorted to by each defendant, Dr. Schoenholtz had no duty to force upon defendants information which was readily available to them in any event.

Accordingly, the second counterclaim is dismissed.

N. The third counterclaim is a conglomeration of grievances lodged by defendants against plaintiff regarding allegations of receiving excessive remuneration under his management contract and dereliction of duties as an officer and director of the Hospital in maintaining two alleged sets of by-laws. These allegations are the subject matter of the shareholders' derivative action brought by defendants in New York State Supreme Court and have no place here. In addition, these claims made by defendants are totally unsupported by the trial record.

It is further alleged by defendants that the instant action was commenced in an effort to diminish defendants' enthusiasm for the continuation of the shareholders' action. In view of our finding that this action was properly brought to protect the interests of participants and beneficiaries of the Plans, the third counterclaim is dismissed.

O. Defendants admit they have failed to prove the fifth counterclaim (there is no fourth) and it is dismissed. (Defendants' Post-Trial Proposed Findings of Fact and Conclusions of Law, ¶ 131, at 60)

P. The sixth counterclaim alleges that for all of the reasons previously alleged, plaintiff failed to properly perform his duties as administrator as described in the Plan agreements. In view of our finding that Dr. Schoenholtz has in all respects acted properly in performing his duties under the Plans, we find no merit to this counterclaim. Accordingly, the sixth counterclaim is dismissed.

CONCLUSION

In accordance with the foregoing, we are constrained to, and do, grant judgment on the issue of liability in favor of plaintiff and against each defendant.

Insufficient material has been submitted to enable us to determine the reasonable value of damages herein, especially in light of the recent determination by the New York Court of Appeals in *In the Matter of*

*Rye Psychiatric Hospital Center, Inc., supra.* Accordingly, we follow a practice our Court has successfully employed for a long time: We direct the parties to endeavor to agree on a reasonable and proper amount of damages, then to provide us with a proposed form of judgment, including such amount agreed upon. If no agreement hereon is arrived at within 60 days from the filing date of this opinion, the parties are directed to serve and file comprehensive and meticulously prepared memoranda of law on the issue of damages, including attorneys' fees and punitive damages.

SO ORDERED.